IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

APHENA PHARMA SOLUTIONS-   *
MARYLAND LLC   *

   Plaintiff,    *

    v.     *   CIVIL NO.: WDQ-12-0852

BIOZONE LABORATORIES, INC.,   *
*et al.*,   *

   Defendants.    *

  *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

Aphena Pharma Solutions-Maryland LLC ("Aphena") sued BioZone Laboratories, Inc. ("BioZone"), BioZone Pharmaceuticals, Inc. ("BioZone Pharmaceuticals"), and Daniel Fisher (collectively "defendants") for contract and fraud claims. Pending are Fisher's motion to dismiss for lack of personal jurisdiction and the defendants' motion to transfer the case to the U.S. District Court for the Northern District of California. Also pending is Aphena's motion for leave to file a surreply to the motion to dismiss. For the following reasons the defendants' motion to transfer will be granted, and Fisher's motion to dismiss for lack of personal jurisdiction will be denied as moot. Leave will not be granted to Aphena to file a surreply.

I.   Background[1]

Aphena, a Delaware LLC formerly known as Celeste Packaging LLC,[2] has its sole production facility in Easton, Maryland, where it employs 176 people.  ECF No. 39-1 at 2 ¶ 2-3.  The sole member of Aphena is Aphena Pharma Solutions Holdings, Inc., formerly known as Prepak Holdings, Inc. ("Prepak"), a Delaware corporation with a principal place of business in Tennessee.[3] Aphena is managed by George Galagno in Maryland.  *See* ECF Nos. 39-1 at 1 ¶ 1, 39-2 ¶ 14.

BioZone is a California corporation, with its principal place of business in California, founded by Fisher and Dr. Brian Keller in 1989.  ECF No. 28-6 ¶ 3.  Fisher served as BioZone's

---

[1] The relevant facts are drawn from submitted affidavits and declarations and are not substantially in dispute. For the motion to dismiss for lack of personal jurisdiction, all "disputed facts and reasonable inferences" are drawn in Fisher's favor.  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

[2] In the complaint, Aphena is described as organized under the laws of Maryland, ECF No. 1 ¶ 10, but Aphena has since acknowledged this statement as incorrect, *see* ECF No. 39 at 9 n.1.  Throughout the complaint and briefing, Aphena has not been forthcoming about its true status, such as repeatedly referring to itself as a "Maryland entity" in its opposition.  *See, e.g.*, ECF No. 39 at 18.  Although it appears that diversity jurisdiction is not threatened by Aphena's inconsistent approach to the facts, the Court cautions that Aphena and its counsel risk sanctions based on their misleading representations to the Court.  *See* Fed. R. Civ. P. 11.

[3] When the complaint was filed, Aphena Pharma Solutions Holdings, Inc. was in Tennessee.  ECF No. 47.  It appears that its principal place of business has since moved to Pennsylvania. ECF No. 39-2 ¶ 2.

president until early 2012. *Id.* ¶ 4. BioZone Pharmaceuticals, a Nevada corporation with its principal place of business in Florida, agreed to purchase BioZone on June 30, 2011. ECF No. 39-3 at 9, 11. Fisher has lived in California for over 60 years. ECF No. 28-6 ¶ 2. His only physical presence in Maryland was two, two-day vacations. *Id.* ¶ 21.

The transaction that gave rise to this case began when Russ Haines in New Jersey called Fisher on behalf of Prepak[4] to express Prepak's interest in purchasing BioZone. *See id.* ¶ 5; ECF No. 36 ¶ 6. The final transaction was Aphena's purchase of formulations for private label cough and cold products from BioZone.[5] *See* ECF No. 1 ¶ 6.

In negotiating the deal with Aphena, Fisher participated in several phone calls involving Bob Patel, John Allen, and Safee Chaudhri, all in Maryland; Brett Fliegler in New York; Dan Huggins in New Jersey or Tennessee; and Bob Allen in Tennessee. *See* ECF No. 36 ¶¶ 8, 10. Fisher also sent to and received from Fliegler and Huggins emails on which Patel and Allen were

---

[4] Fisher's affidavits indicate that Prepak Systems, Inc., a subsidiary of Prepak was the entity seeking to purchase BioZone. *See* ECF No. 36 at 6. Although not directly stated in the affidavits submitted by Aphena, it appears more likely that Prepak was to be the purchaser. *See* ECF Nos. 39-2 ¶¶ 6-9, 39-4 ¶ 2.

[5] The record does not reflect when or why the transaction changed.

copied.  *Id.* ¶¶ 5, 9.  The price quotations for the transactions
were sent to Dan Huggins at Prepak in New Jersey.  *Id.* ¶ 4; ECF
No. 28-6 ¶ 14.  Fisher also communicated directly with Allen
about the logistics of the transaction.  ECF No. 28-6 ¶ 17-18.

   In April 2010, Fisher sent an email directly to Huggins,
Patel, Safee, and Taylor about Aphena personnel's upcoming trip
to California, arranged by Haines, to meet with Fisher and other
BioZone representatives.  ECF No. 36 ¶ 7.  There were three
meetings in California.  ECF No. 28-6 ¶¶ 7-9.

   During the negotiations, Fisher was informed that Aphena
was in Maryland, the agreement was to be delivered to Maryland,
only the Maryland facility could manufacture the formulations,
and the project would be managed by Aphena's Maryland employees.
ECF No. 39-2 ¶ 9.  Formulations and related materials provided
by BioZone were delivered to Maryland.  *Id.* at 3 ¶ 7.

   After the negotiations, all was not well between Aphena and
BioZone.  In late summer and early fall 2010, Fisher contacted
Patel directly about Aphena's failure to pay.  ECF No. 28-6 ¶
20.  Aphena alleges that BioZone failed to deliver the
formulations on time; when delivered, they did not meet the
proper standards.  ECF No. 1 ¶¶ 112-19.  Aphena also alleges
that it was forced to recall all products made from BioZone's
work because of deficiencies.  *Id.* ¶ 166.

On March 19, 2012, Aphena sued BioZone, BioZone
Pharmaceuticals, and Fisher for (1) breach of contract, (2)-(3)
fraud in the inducement, (4)-(5) intentional misrepresentation,
(6) negligent misrepresentation, (7) negligent hiring, and (8)
unjust enrichment.  ECF No. 1.  On May 21, 2012, BioZone and
BioZone Pharmaceuticals answered.  ECF No. 29.  The same day,
Fisher moved to dismiss for lack of personal jurisdiction.[6]  ECF
No. 28.  On May 30, 2012, the defendants moved to transfer the
case to the U.S. District Court for the Northern District of
California under 28 U.S.C. § 1404.  ECF No. 35.  On June 18,
2012, Aphena filed a consolidated response to the motions.  ECF
No. 39.  On July 9, 2012, the defendants replied.  ECF Nos. 40,
41.

On July 19, 2012, Aphena moved for leave to file a surreply
to Fisher's motion to dismiss.  ECF No. 43.  On July 30, 2012,
Fisher responded, ECF No. 44, and on August 9, 2012, Aphena
replied, ECF No. 45.

II.  Analysis

A.  Leave to File Surreply

Aphena seeks leave to file a surreply to Fisher's motion to
dismiss because Fisher--for the first time in his reply--relied
on the incorrect standard for adjudication of his motion.  ECF

---

[6] On May 31, 2012, Fisher filed an affidavit to supplement the
one he submitted with the motion.  *See* ECF No. 36.

No. 43 at 2.  Fisher asserts that the standard he articulated is correct.  ECF No. 44 at 2.

Unless otherwise ordered by the Court, a party may not file a surreply.  Local Rule 105.2(a) (D. Md. 2012).  Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented in the opposing party's reply.  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd* 85 F. App'x 960 (4th Cir. 2004).

Fisher had not addressed the legal standard for the dismissal in his motion, but Aphena presented its view of the standard in its opposition.  *See* ECF No. 39 at 27.  Fisher then presented his argument on the standard in his reply.  ECF No. 40 at 10.  As such, the standard was not first raised in the reply.  Aphena had the first word on what standard the Court should use. *Cf. Khoury*, 268 F. Supp. 2d at 605.  As both sides of the argument have been presented, the motion will be denied.

    B.   Personal Jurisdiction

       1.   Legal Standard

Aphena asserts that it need make only a *prima facie* showing of personal jurisdiction.  ECF No. 39 at 27.  Fisher argues that the summary judgment standard applies under Fed. R. Civ. P. 12(d).  ECF No. 40 at 10.

The party asserting the claim has the burden of proving personal jurisdiction.  *See Combs v. Bakker,* 886 F.2d 673, 676

(4th Cir. 1989).  If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling until receiving, at trial, evidence relevant to jurisdiction.  *Id.*  If the court determines the issue without an evidentiary hearing, and relies only on the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  In determining whether the *prima facie* case has been shown, the court "must draw all reasonable inferences arising from the proof, and resolve all factual, disputes in the plaintiff's favor."  *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

A federal district court may assert specific personal jurisdiction over a non-resident when the exercise of jurisdiction is (1) authorized by the forum state's long-arm statute, and (2) consistent with due process.[7]

---

[7] *Carefirst*, 334 F.3d at 396.  In Maryland, the "statutory inquiry merges with [the] constitutional inquiry," because "Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Id.* at 396-97.  Nevertheless, the plaintiff must still specify which provisions of the long-arm statute provide for personal jurisdiction over the defendant.  *See Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 811-12 & n.7 (D. Md. 2010); *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006) (it is not "permissible to simply dispense with analysis under the long-arm statute").

Fisher is incorrect that the summary judgment standard is applied under Rule 12(d).  Rule 12(d) applies only to motions under 12(b)(6), failure to state a claim, and 12(c), judgment on the pleadings.  A motion to dismiss for lack of personal jurisdiction is under Rule 12(b)(2).  As the motion is based only on the complaint and affidavits, Aphena need make only a *prima facie* showing of personal jurisdiction. *Carefirst*, 334 F.3d at 396.

### 2.   Jurisdiction over Fisher

Fisher argues that his contacts with Maryland are insufficient under the Maryland long-arm statute and do not satisfy due process.[8]  ECF No. 28-1 at 6-12.  Aphena asserts that Fisher had sufficient contacts and falls within the long-arm statute.  ECF No. 39 at 32-40.

Although Maryland's long-arm statute authorizes jurisdiction to the extent allowed by due process, the plaintiff must identify a specific provision authorizing personal jurisdiction.[9]  The parties dispute both the application of the long-arm statute and due process.  Aphena asserts that this

---

[8] Fisher also asserts that he is protected under the fiduciary shield doctrine.  ECF No. 40 at 13.  As the Court will conclude that the Maryland long-arm statute does not reach Fisher, it will not reach this argument.

[9] *See Cleaning Auth.*, 739 F. Supp. 2d at 811-12 & n.7; *Mackey*, 892 A.2d at 493 n.6.

Court has jurisdiction under subsections (b)(1) and (b)(3) of
the long-arm statute. ECF No. 39 at 38-39; *see* Md. Code Ann.,
Cts. & Jud. Proc. § 6-103(b)(1), (3).

### b.   Subsection (b)(1)

Aphena asserts that Fisher's contacts with Aphena personnel
in Maryland are sufficient to constitute transacting business
within the state. ECF No. 39 at 38. Fisher argues that he
performed no actions in Maryland, and his communications were
directed at persons in other states. *See* ECF Nos. 28-1 at 11,
40 at 7-9, 13-14.

Under subsection (b)(1), a defendant who "transacts any
business" in Maryland is subject to jurisdiction here. Md. Code
Ann., Cts. & Jud. Proc. § 6-103(b)(1). Although a defendant
need not engage in "commerce or . . . transactions for profit,"[10]
"Maryland courts have construed the phrase 'transacting
business' narrowly, requiring, for example, significant
negotiations or intentional advertising and selling in the forum
state."[11] Although a defendant need not have been physically
present in Maryland,[12] the plaintiff must show "some purposeful

---

[10] *Novack v. Nat'l Hot Rod Ass'n*, 231 A.2d 22, 26 (Md. 1967).

[11] *Music Makers Holdings, LLC v. Sarro*, Civil No. RWT-09-1836,
2010 WL 2807805, at *3 (D. Md. July 15, 2010).

[12] *Capital Source Fin., LLC v. Delco Oil, Inc.*, 625 F. Supp. 2d
304, 313 (D. Md. 2007).

act in Maryland in relation to one or more of the elements of [the] cause of action."[13]  Subsection (b)(1) ultimately "requires actions that culminate in purposeful activity within the state." *Bahn v. Chi. Motor Clubs Ins. Co.*, 634 A.2d 63, 67 (Md. Ct. Spec. App. 1993) (internal quotation marks omitted).

None of the cases cited by Aphena requires the exercise of jurisdiction over Fisher.  The closest is *Jason Pharmaceuticals, Inc. v. Jinas Bros. Packaging Co.*, 617 A.2d 1125 (Md. Ct. Spec. App. 1993).  In that case, the defendant initiated contact with the plaintiff and expressed interest in doing business, engaged in negotiations with the plaintiff which was located in Maryland, and sent a down payment to Maryland.  *Id.* at 1129. The Court of Special Appeals held that this was sufficient for subsection (b)(1).  *Id.*

The facts in this case are dissimilar.  Aphena's parent company initiated contact with Fisher to inquire about purchasing BioZone.  *See* ECF Nos. 28-6 ¶ 5, 36 ¶ 6.  Although

---

[13] *Talegen Corp. v. Signet Leasing & Fin. Corp.*, 657 A.2d 406, 409 n.3 (Md. Ct. Spec. App. 1995); *see also Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006) (although it was "arguable that [the] [d]efendant [had] performed work or service in Maryland," jurisdiction under subsection (b)(1) was improper because "the cause of action [did] not arise from that work or service"); *Bond v. Messerman*, 873 A.2d 417, 430 (Md. Ct. Spec. App. 2005) ("The fact that [the defendant] [had] referred his client to [a Maryland hospital] ha[d] no bearing as to the jurisdictional issue because that referral [was] in no way connected to [the plaintiff's] cause of action against [the defendant].").

Aphena personnel from Maryland were involved in the calls between Fisher and Aphena, it appears that the majority of the negotiations were undertaken by individuals outside the state. *See* ECF No. 28-6 ¶¶ 17-18.  Aphena did, however, pay from Maryland, but nothing in the record directly connects Fisher to receipt of the payment.  *See* ECF No. 39-1 at 3 ¶ 9.

This case does not meet the factors that the Court found met subsection (b)(1) in *Jason Pharmaceuticals*.  *Cf. Jason Pharms.*, 617 A.2d at 1129.  Further, the other cases on which Aphena relies are distinguishable on similar grounds.[14]  Aphena has not cited, nor has the Court found, a case with similar facts--particularly with an individual defendant--where personal jurisdiction has been found.  Aphena has not shown jurisdiction under § 6-103(b)(1).

c.   Subsection (b)(3)

Aphena argues that it sustained injury within Maryland, enabling jurisdiction over Fisher.  ECF No. 39 at 39.  Fisher asserts that he made no act or omission within the state.  ECF Nos. 28-1 at 12, 40 at 15.

---

[14] *Cf., e.g., Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 620-21 (D. Md. 1998)  (franchise agreement with significant continuing responsibilities); *Bahn v. Chi. Motor Club Ins.*, 634 A.2d 63, 67-68 (Md. Ct. Spec. App. 1993) (insurance contract sent to Maryland and premiums paid from state).

Under subsection (b)(3) a defendant who "causes tortious injury in the State by an act or omission in the State" is subject to personal jurisdiction in Maryland.  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3).  The parties disagree over the requirements of the statute.  The Maryland Court of Appeals has not definitively addressed the issue, and the cases of this district vary.

In *Dring v. Sullivan*, 423 F. Supp. 2d 540 (D. Md. 2006), the court stated that "[c]ourts have held that . . . subsection [(b)(3)] requires that both the tortious injury and the tortious act must have occurred in Maryland."  *Id.* at 546 (collecting cases).  Aphena, however, relies on the two *Maoz* cases.[15]  *See, e.g.*, ECF No. 39 at 31.  In *Maoz I*, the Court stated that subsection (b)(3) was satisfied when "fraudulent acts were directed at [the plaintiff's] Maryland office, and it can [be] plausibly said that [the plaintiff] suffered the injury from the fraud in Maryland."  *Maoz I*, 795 F. Supp. 2d at 370.  Although the *Maoz II* Court relied upon *Craig v. General Finance Corp. of Illinois*,[16] *Craig* makes clear that subsection (b)(3) requires the

---

[15] *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.* (*Maoz I*), 795 F. Supp. 2d 365 (D. Md. 2011); *A Love of Food I, v. Maoz Vegetarian USA, Inc.* (*Maoz II*), Civil No. AW-10-2352, 2012 WL 2479546 (D. Md. June 28, 2012).

[16] 504 F. Supp. 1033 (D. Md. 1980).  See *Maoz II*, 2012 WL 2479546, at *7.

injury and the act to occur in Maryland.  *Craig*, 504 F. Supp. at 1037.

Subsection (b)(3) contrasts with subsection (b)(4), which permits jurisdiction when there is a tortious injury in or outside the state with an act or omission in or outside the state, when the defendant "does or solicits business, engages in any other persistent course of conduct in the State, or derives substantial revenue from goods, food, services, or manufactured products" in the state.  Md. Code Ann, Cts. & Jud. Proc. § 6-103(b)(4).  *Craig* treats subsection (b)(4) as the other side of the coin from subsection (b)(3), and reads the long-arm statute as separating the act and injury elements.  *Craig*, 504 F. Supp. at 1036.  Subsection (b)(3) thus requires injury and act in Maryland, while (b)(4) does not.[17]  *See id.*

Although the results of Fisher's alleged misrepresentations were felt in Maryland, Aphena has not alleged, nor do the affidavits indicate, that Fisher acted in Maryland.  The only communications in the record that could give rise to such misrepresentations were phone calls or emails--the types of

---

[17] *Craig* relies on *Zinz v. Evans & Mitchell Industries*, 324 A.2d 140 (Md. Ct. Spec. App. 1974) where the Court of Special Appeals held that mailing letters and initiating phone calls in Illinois were insufficient for personal jurisdiction in Maryland under subsection (b)(3).  *Zinz*, 324 A.2d at 144; *see Craig*, 504 F. Supp. at 1037.  *But cf. Planet Techs. Inc. v. Planit Tech. Grp., LLC*, 735 F. Supp. 2d 397 (D. Md. 2010) (recognizing that in trademark cases an "act" can take place where consumers may be deceived).

communications that *Zinz* held were not acts in Maryland.  *Zinz*, 324 A.2d at 144.  Fisher is not subject to jurisdiction under § 6-103(b)(3).

> 3.   Due Process

Fisher--arguing that Aphena is not really a Maryland entity--asserts that his activities were not sufficiently directed toward Maryland, and this Court's exercise of jurisdiction would violate due process.  ECF No. 40 at 12-13. Aphena asserts that it is based in Maryland, and Fisher had sufficient contacts with the state.  ECF No. 39 at 32-37.  The due process minimum contacts analysis confirms the lack of jurisdiction under the long-arm statute.

The basis for analyzing personal jurisdiction under due process is "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'"[18]  To determine whether specific jurisdiction exists, the Court considers (1) the extent to which Fisher purposely availed himself of the privilege of conducting activities in the state, (2) whether Aphena's claims arise out of the activities directed at the state, and (3) whether the exercise of jurisdiction is "constitutionally

---

[18] *Carefirst*, 334 F.3d at 397 (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

reasonable." *Carefirst*, 334 F.3d at 397 (internal quotation marks omitted). The minimum contacts analysis concerns whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Even drawing all inferences and resolving disputes in favor of Aphena, *see Mylan Labs*, 2 F.3d at 60, Fisher's contacts do not meet this standard. First, weighing against the required contacts, Prepak, not Fisher, initiated contact. *See Johansson Corp. v. Bowness Const. Co.*, 304 F. Supp. 2d 701, 706 (D. Md. 2004). Fisher has been to Maryland only twice, and neither trip was connected to the transaction with Aphena. *See* ECF No. 28-6 ¶ 22.

Fisher was told that the formulations were destined for Maryland, ECF No. 39-4 ¶ 9, and communicated by phone, email, and in person in California with Aphena personnel from Maryland, *see id.* ¶ 10, 12; ECF No. 36 ¶ 5, 7-10. Nevertheless, much of Fisher's substantive negotiations were with individuals located outside of Maryland. *See* ECF No. 36 ¶ 5-8.

Fisher's contact with Maryland is tenuous. The facts do not show that he purposely availed himself of the privilege of doing business in the state, particularly given the initial representations from Prepak from outside the state. *See* ECF

Nos. 28-6 ¶ 5, 36 ¶ 6.  Instead, a business deal for which he was contacted became a transaction involving Maryland.  Few of Fisher's actions underlying Aphena's claims were directed at Maryland.  *See Carefirst*, 334 F.3d at 397.

Finally, given the unusual nature of this case--concerning jurisdiction over a person relating to transactions between businesses--it seems unlikely that Fisher expected to be haled into court in Maryland for those transactions.  *See World-Wide Volkswagen*, 444 U.S. at 297.  Due process does not permit this Court to exercise personal jurisdiction over Fisher.  *See Carefirst*, 334 F.3d at 397.  Fisher's motion to dismiss for lack of personal jurisdiction will denied as moot, however, because the defendants' motion to transfer the case to the Northern District of California[19] will be granted.

C.   Transfer to the Northern District of California

The defendants assert that the Court should transfer this case to the Northern District of California because the transfer would be more convenient to the parties and witnesses and serve the interests of justice.  ECF No. 35 at 8.  Aphena argues that the transfer would not be more convenient or serve the interests

---

[19] Fisher acknowledges that he is subject to personal jurisdiction in the Northern District of California.  ECF No. 35 at 6.

of justice, and its choice of forum is entitled to significant weight.  ECF No. 39 at 20.

Under 28 U.S.C. § 1404(a),[20] "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."  Unless the balance of these factors[21] "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[22]  The moving party has the burden to show that transfer to another forum is proper. *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

On a motion to transfer, the Court first asks whether the

---

[20] This provision "was enacted to prevent the waste of time, energy and money as well as to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Dicken v. United States,* 862 F. Supp. 91, 92 (D. Md. 1994) (*citing Van Dusen v. Barrack,* 376 U.S. 612 (1964), *Norwood v. Kirkpatrick,* 349 U.S. 29 (1955)).

[21] "[T]he statute provides no guidance as to the weight given . . . [to] the factors[.]" *Byerson v. Equifax Info. Servs.*, LLC, 467 F. Supp. 2d 627, 632 (E.D. Va. 2006).  Some courts consider convenience the most important factor; others have stated that "[t]he interest of justice may be decisive . . . even though the convenience of the parties and witnesses point in a different direction." *Byerson*, 467 F. Supp. 2d at 635 (internal quotation marks omitted); 15 Charles Alan Wright, et al., *Federal Practice & Procedure* § 3854 (collecting cases).

[22] *Collins v. Straight Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (*quoting Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946)); *see also Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).

action could have been brought in the transferee district.[23]   If

so, then the Court considers: (1) the weight accorded plain-

tiff's choice of venue, (2) witness convenience and access, (3)

convenience of the parties, and (4) the interest of justice.

*Mamani*, 547 F. Supp. 2d at 469.   The Court's decision "turn[s]

on the particular facts of the case," and "all the relevant

factors to determine whether . . . on balance the litigation

would more conveniently proceed and the interests of justice be

better served by transfer to a different forum."   *Byerson*, 467

F. Supp. 2d at 632 (internal quotation marks omitted); *see* 15

Wright, et al., § 3847.   The decision to transfer is "committed

to the discretion of the district court."   *In re Ralston Purina*

*Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984); *Tech USA, Inc. v.*

*Evans*, 592 F. Supp. 2d 852, 857 (D. Md. 2009).

> 1.   Weight Accorded to Aphena's Choice of Venue

The defendants argue that Aphena's choice of forum is

entitled to little weight because its corporate offices are in

Tennessee, and the complaint depends on the defendants' acts and

omissions in California.   ECF No. 35 at 8-9.   Aphena argues that

Maryland is its home forum, and BioZone worked with Aphena's

---

[23]   Transfer is proper when the transferee court is a proper
venue and has personal jurisdiction over the defendants. *Koh v.*
*Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).
The parties agree that this suit could have been brought in the
Northern District of California and that it has jurisdiction
over the defendants. *See* ECF Nos. 35 at 6-8, 39 at 20 n.1.

Maryland employees and delivered products to Maryland for use there.  ECF No. 39 at 21.

"Ordinarily, a plaintiff's choice of forum is entitled to substantial weight." *Lynch*, 237 F. Supp. 2d at 617.  But, when the chosen forum is not the plaintiff's home or has little connection to the events giving rise to the litigation, less weight is given to the plaintiff's choice.  *Tse v. Apple Computer*, Civ. No. L-05-2149, 2006 WL 2583608, at *2 (D. Md. Aug. 31, 2006).

Apart from its relationship with Prepak, Aphena is currently managed by George Galgano, its general manager, located in Maryland.  See ECF Nos. 39-1 at 1-3, 3-2 ¶ 14.  A corporation is a resident of the state of its principal place of business--the location where its officers direct activities.[24] As Galgano, the manager, is in Maryland, this state is Aphena's home.  Aphena's choice of this Court weighs against transferring the case.  *See Lynch*, 237 F. Supp. 2d at 617.

2.   Convenience of Witnesses

The defendants assert that "[t]he majority of key witnesses are in California," favoring transfer.  ECF No. 35 at 10. Aphena argues that the dispute is also dependent on witnesses located in Maryland, and transfer would simply shift

---

[24] *See* 28 U.S.C. § 1391(c)(2); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

inconvenience from the defendants' witnesses to Aphena's.   ECF
No. 39 at 22-23.

The majority of the defendants' potential witnesses are in
California.  *See* ECF No. 35-4.  Although several of Aphena's
witnesses reside in Maryland, ECF No. 39-1 at 2 ¶¶ 11-13, others
likely to be called, such as Huggins, Haines, or Fliegler,
reside elsewhere in the eastern United States, *see* ECF NO. 36 ¶¶
5-7.  This favors retaining the case because the "transfer would
serve only to shift the balance of inconvenience."  *Bd. of Trs.,*
*Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air*
*Conditioning*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988).

### 3.   Convenience to the Parties

The defendants argue that California is most convenient
because Aphena representatives have previously travelled to
California, and key Aphena representatives are in other states
and would have to travel regardless.  ECF No. 35 at 12.  They
also argue that BioZone would have to transport its documents.
*Id.*  Aphena asserts that California is inconvenient because the
only relationship of the case to that state is the defendants'
residence, and it would have to transport documents to
California.  ECF No. 39 at 24.

That Aphena representatives had previously travelled to
California weighs little in the analysis.  *See FC Invest. Grp.*
*LC v. Lichtenstein*, 441 F. Supp. 2d 3, 13 (D.D.C. 2006).

Further, although BioZone may have to transport documents to
Maryland, Aphena would have to do the same to California.  On
balance, this factor does not favor transfer.

     4.   Interests of Justice

The defendants assert that the interests of justice require
transfer because California law will apply to the case and the
Northern District of California has personal jurisdiction over
Fisher.  ECF No. 35 at 13-14.  Aphena argues that Maryland law
applies to some if not all of its claims, and this Court has
personal jurisdiction over Fisher.  ECF No. 39 at 25-26.

Familiarity with applicable law is one of the interests of
justice factors.  *See Dicken v. United States*, 862 F. Supp. 91,
93-94 (D. Md. 1994).  The law governing the claims in this case
has not been determined.  For the tort claims, Maryland applies
the law of the jurisdiction "where the last act required to
complete the tort occurred."  *Philip Morris Inc. v. Angeletti*,
752 A.2d 200, 231 (Md. 2000).  Although the defendants argue
that any misrepresentations occurred in California, requiring
California law, ECF No. 35 at 13, Aphena asserts that it was
induced to rely in Maryland, where it also sustained damage, ECF
No. 39 at 25.  Maryland law is not clear about where the "wrong"
occurs in fraud and negligent misrepresentation cases.  *See
Capital Source Fin. LLC v. B&B Contractors, Inc.*, Civil No. DKC-

04-3739, 2005 WL 1025953, at *10 (D. Md. Apr. 28, 2005).[25]  "In light of the uncertainty as to what substantive law would govern," the law to be applied in the misrepresentation claims favors neither forum.  *Id.*

Similarly, Maryland follows *lex loci contractus*, applying the law of the jurisdiction where the last act necessary to form a contract was made.[26]  *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988).  Although the record regarding the contracts is sparse, it appears that the last acceptance--and the formation of the contract--was BioZone's acceptance of Aphena's requirements for specifications.  ECF No. 1 ¶ 87.  As such, it is likely that the law of California, where BioZone is located, would govern the contract claims.  *See Kramer*, 535 A.2d at 467.  This favors transfer to California.

Most importantly, this Court does not have personal jurisdiction over Fisher.  *See supra* Part II.B.2.  Fisher's key role in BioZone's negotiations with Aphena indicates that he

---

[25] *Capital Source Finance* noted that this question had been certified to the Maryland Court of Appeals shortly before the memorandum opinion was issued.  *Capital Source Fin.*, 2005 WL 1025953, at *10; *see Hardwire LLC v. Goodyear Tire & Rubber Co.*, 360 F. Supp. 2d 728 (D. Md. 2005) (certifying question).  After the parties in *Hardwire* settled, the question was withdrawn.  *Hardwire LLC v. Goodyear Tire & Rubbber Co.*, Civil No. RDB-04-2524, ECF No. 45.

[26] Under Maryland law, a contract requires mutual assent--offer and acceptance--and consideration.  *See CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004); *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007).

would be a central figure in any trial in this case.  Thus,
judicial economy would best be served by Fisher remaining as a
defendant and a transfer of the case to the Northern District of
California.[27]  Although the other factors are either evenly
balanced or favor retaining the case, the interests of justice
strongly favor transfer.  Accordingly, the defendants' motion to
transfer this case to the United States District Court for the
Northern District of California will be granted.

III. Conclusion

For the reasons stated above, Aphena's motion for leave to
file a surreply will be denied.  The defendants' motion to
transfer will be granted.  Fisher's motion to dismiss for lack
of personal jurisdiction will be denied as moot.

_____
Date   12/10/12

_____
William D. Quarles, Jr.
United States District Judge

---

[27] *See D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 783-84
(D. Md. 2009); *see also* 28 U.S.C. § 1406 (allowing transfer to
cure venue defects); *In re Carefirst of Md., Inc.*, 305 F.3d 253,
255-56 (stating that 28 U.S.C. § 1406 can be used to cure
personal jurisdiction defects).